UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RICHARD PERRY,

                              Plaintiff,

          v.

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION, SALVATORE
LOMBARDO and GLENN O'CONNOR.,


                              Defendants.

-----------------------------------------------------------------X

**Civil Action No.:**

**COMPLAINT AND JURY DEMAND**

## I.    INTRODUCTION

1. Plaintiff, Richard Perry ("Plaintiff") brings this action, by his attorneys, Imbesi Law P.C., against Defendants City Of New York, New York City Department Of Correction, Salvatore Lombardo and Glenn O'Connor (collectively, "Defendants") seeking damages and other appropriate relief for his claims, including employment discrimination and subsequent retaliation, in violation of federal, state and city laws, including the Age Discrimination in Employment Act of 1967 ( "ADEA" or "29 U.S.C.A. § 623"), Article 15 of the Executive Laws of the State of New York, §290 *et. seq*., including §296 as amended ("State HRL"), and Article I, Section 8 of the New York City Administrative Code, known as the New York City Human Rights Law, §8-101 *et. seq.*, ("City HRL").

## II.    JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction of the state law claims asserted pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 as the events and conduct giving rise to the claims occurred in this District.

### III. PARTIES

5. Plaintiff Richard Perry is a resident of Jamaica, New York.

6. Defendant City of New York ("City") is a municipality comprising of five (5) boroughs in New York.

7. The City operates the New York City Department of Correction ("Department"), a government agency responsible for the custody, control, and care of the City's imprisoned population. The Department manages eleven (11) inmate facilities and employs more than five thousand (5,000) employees throughout New York City.

8. Defendant Salvatore Lombardo ("Defendant Lombardo") is an employee with the City and a resident of the State of New York.

9. Defendant Glenn O'Connor ("Defendant O'Connor") is an employee with the City and a resident of the State of New York.

10. Defendants are "employers" as defined in the applicable federal, New York State and New York City statutory provisions.

11. Plaintiff is an "employee" as defined in the applicable federal, New York State and New York City statutory provisions.

**A. Background**

12. In 2010, Mr. Perry began working for the Department, operated by the City of New York, as a cook at Rikers Island.

13. In 2013, Mr. Perry was promoted to senior cook, where he remained until he was constructively discharged on September 23, 2019.

14. In May of 2017, Defendant Lombardo, a food service administrator, became Mr. Perry's immediate supervisor.

**A. Plaintiff's First EEO Complaint Against Defendants Leads to Immediate Retaliation**

15. Within a few months of Defendant Lombardo's supervision of Mr. Perry, he began making frequent discriminatory remarks based on Mr. Perry's age (fifty-seven at the time).

16. On a weekly basis, Defendant Lombardo asked Mr. Perry when he and his wife (also an employee with the department) were going to retire.

17. Defendant Lombardo told Mr. Perry to "enjoy the good life" and asked how old Mr. Perry would be when he retired.

18. Mr. Perry asked his supervisor to stop, but Defendant Lombardo's discriminatory behavior continued on a regular basis.

19. On or about November 21, 2017, Mr. Perry filed an internal EEO complaint within the Department. Mr. Perry complained about Defendant Lombardo's consistent statements about his age, as well as remarks made about Mr. Perry's race.

20. Shortly after Mr. Perry filed his internal EEO complaint, Defendant Lombardo set out on a path of persistent retaliation, which continued for years. Defendant Lombardo was moved to a different facility in March of 2019, but the harassment and retaliation continued through Defendant O'Connor until Mr. Perry's constructive discharge on September 23, 2019.

21.     For example, in the two (2) to three (3) years prior to filing his internal complaint alleging discrimination, Mr. Perry regularly worked overtime and received significant premium overtime compensation.

22.     However, after Mr. Perry filed his complaint, Defendant Lombardo changed Mr. Perry's schedule and his overtime hours were significantly reduced. Mr. Perry was no longer offered overtime on a regular basis, causing a substantial financial loss.

23.     Upon information and belief, similarly situated employees who did not file a complaint against Defendant Lombardo continued to work overtime.

24.     In addition to the loss of overtime, after Mr. Perry filed his complaint, he began receiving incorrect paychecks for less than the amount he was owed. This caused Mr. Perry to experience a delay in receiving his payments. Mr Perry often had to ask Defendant Lombardo, and other Department employees, to correct his paychecks.

25.     Prior to filing the internal EEO complaint, Mr. Perry did not experience issues with timely or accurate payments.

**B. <u>Second EEO Complaint Against the Department and Defendant Lombardo Leads to Further Retaliation</u>**

26.     On or about June 25, 2018, Mr. Perry filed a second internal EEO complaint against Defendants, alleging discrimination and subsequent retaliation.

27.     The next day, Mr. Perry asked Defendant Lombardo to explain the reason he had not been paid for work performed the prior week.

28.     As their conversation ended, Defendant Lombardo, without justifiable explanation, ordered Mr. Perry to leave work and go home. Mr. Perry complied with his supervisor's demands and left work.

29. Defendant Lombardo then wrote a workplace violence charge against Mr. Perry, falsely alleging that Mr. Perry left work without permission and that Defendant Lombardo felt threatened during the conversation described above.

30. Mr. Perry challenged Defendant Lombardo's written charge and shockingly, Defendant Lombardo denied ordering Mr. Perry to go home on or about June 26, 2018.

31. On November 21, 2018, a hearing was held regarding the workplace violence charge.

32. At the hearing, it was proven that Defendant Lombardo lacked authority to send Mr. Perry home. The panel did not find merit to the workplace violence complaint against Mr. Perry and ordered Defendant to return seven (7) hours of pay to Mr. Perry.

**C. Defendant Lombardo Changes Mr. Perry's Shift**

33. After Mr. Perry's second complaint, Defendant Lombardo made a drastic change to his shift as punishment for filing the complaint.

34. For approximately five (5) years, Mr. Perry worked the 4am-1pm shift.

35. In or about late 2017, based on seniority, Mr. Perry was assigned to work the 10am-7pm shift, which he worked for two (2) years. Mr. Perry preferred this shift, which he earned based on seniority.

36. However, in late July 2018, just one month after filing his second complaint, Defendant Lombardo informed Mr. Perry that he would be re-assigned to the 4am-1pm shift starting in mid-August.

37. Defendant Lombardo knew the 4am-1pm shift was less desirable to Mr. Perry and that based on seniority, he should not have been re-assigned to that shift over other employees.

38. When Mr. Perry asked Defendant Lombardo about the schedule change, he responded that there were "operational needs."

39. However, during a meeting, Defendant O'Connor, a senior executive and Defendant Lombardo's supervisor, informed Mr. Perry that the shift change decision was made solely by Defendant Lombardo.

40. In August of 2018, on the first day of his new shift, Defendant Lombardo falsely accused Mr. Perry of sleeping on the job and stated that he felt unsafe in Mr. Perry's presence. Defendant Lombardo filed a second workplace violence report against Mr. Perry. Mr. Perry asked to see the videos but was not provided with a copy. Although Mr. Perry disagreed with any allegedly violent behavior, and heard that the video showed him making coffee, Defendants left the negative charge in his file. Notating an employee's file with workplace violence has significant negative consequences, including difficulty in obtaining promotions, bonuses, and/or transfers.

41. Mr. Perry provided Defendants with a written response to Defendant Lombardo's false accusations and requested Defendants maintain any video footage of the area.

42. A few days later, on or about August 14, 2018, Mr. Perry submitted medical documentation evidencing that the 4am-1pm shift had previously had an adverse effect on his health.

43. Defendant Lombardo told Mr. Perry to apply for an accommodation.

44. Later that month, Mr. Perry called out sick on August 26, 2018 and was out until August 30, 2018.

45. Typically, the standard practice within the unit is that an employee calls and reports out sick to the control room of the facility, and upon return, a doctors' note may be

submitted. Additionally, it is customary practice that an employee is out sick until he or she informs the unit that they are returning, or the unit supervising staff reaches out to the employee.

46. Mr. Perry complied with the above-mentioned standard practice that he followed throughout his several years of employment.

47. Despite following customary practices, Defendant Lombardo classified Mr. Perry's absences as absent without leave ("AWOL"). Notating an employee's file with AWOL has significant negative consequences, including difficulty in obtaining promotions, bonuses, and/or transfers.

48. From August to November of 2018, Mr. Perry continued to ask Defendant Lombardo if he could return to the 10am-7pm shift when senior cook Enesco Hunt retired in December.

49. Mr. Perry reiterated the hardship that the 4am-1pm shift caused and that he would like to have Sunday off to attend church.

50. At the end of November, Mr. Perry submitted the request to Defendant Lombardo in writing.

51. On or about December 1, 2018, Senior Cook Hunt retired. Given Mr. Perry's level of seniority, he again asked Defendant Lombardo and Defendant O'Connor if he could move to the now available 10am-7pm shift.

52. However, Defendant Lombardo and Defendant O'Connor refused Mr. Perry's request and placed others with less seniority in the 10am-7pm shift. Defendants also transferred Keith Brown from an outside facility to the 10am-7pm shift Mr. Perry was seeking.

53. Neither Mr. Perry nor Mr. Brown wanted the shift they were assigned and on or about December 12, 2018, sent a written request to Defendant Lombardo and Defendant

O'Connor requesting to switch their schedules with each other. Mr. Perry included in his letter that the switch would "cause no hardship" and "allow us to accommodate our family and religious desire and responsibilities."

54. Defendants refused to make the switch and again told Mr. Perry was told that his change was due to operational needs. Defendants never provided further information.

55. Upon information and belief, Defendant Lombardo told Mr. Perry's co-workers that he wanted to "keep an eye" on Mr. Perry, as during the 4am-1pm shift, Defendant Lombardo (who works 5am-1pm) and Mr. Perry overlap for most of the shift, unlike the 10am-7pm shift.

56. Mr. Perry also reached out to Defendant O'Connor regarding the schedule and ongoing retaliation, but never received a response.

### D. Defendants Fail to Stop Continuous Retaliation

57. At all times, Defendants failed to remedy the situation as the retaliation against Mr. Perry continued for over a year.

58. On December 22, 2018 Mr. Perry called out sick or four (4) days and initially, Mr. Perry was paid for the sick days.

59. However, in early January of 2019, Defendant Lombardo told Mr. Perry that he "changed his mind" and unlawfully deducted thirty-two (32) hours from a recent paycheck. Mr. Perry has not been paid for the retaliatory reduction of hours.

60. Also, in late 2018, Defendant Lombardo began excluding Mr. Perry from staff meetings. Defendant Lombardo meets with senior cooks and managers on a weekly basis, but Mr. Perry has not been asked to participate in any meetings for the last several months.

61. Upon information and belief, Defendant Lombardo has informed employees not to speak with Mr. Perry.

62. On February 1, 2019, Mr. Perry reported this conduct to Defendant O'Connor, Defendant Lombardo, and additional senior employees. Mr. Perry specifically informed Defendants that he believed Defendant Lombardo's actions were in retaliation for the filing of his internal complaint.

63. At all times, Defendants failed to respond.

### E. Internal EEO Complaint Reveals "Sufficient Evidence" to Support Mr. Perry's Allegations

64. Mr. Perry's internal EEO complaint was pending for almost a year. During that time, Mr. Perry continued to inform Defendants of the ongoing retaliation. He regularly updated the EEO with the above-mentioned retaliation.

65. On or about March 4, 2019, Mr. Perry received a final determination.

66. The investigation "revealed sufficient evidence to support some of [his] allegations based on retaliation.

67. Despite the EEO's decision, Defendants failed to remedy Mr. Perry's situation and the ongoing retaliation.

68. In late March of 2019, after Defendant Lombardo was transferred to a different facility, Wanda Barr became Mr. Perry's direct supervisor. Upon information and belief, Defendant O'Connor instructed Ms. Barr not to return Mr. Perry to the 10am-7pm shift.

69. Defendant O'Connor also transferred Mr. Brown to the facility where Defendant Lombardo was employed. Mr. Brown then received the 4am-1pm shift that he had requested. Upon information and belief, this transfer was to prevent Mr. Brown from switching shifts with Mr. Perry.

70. Once Mr. Brown was transferred, employees with less seniority than Mr. Perry were placed in the 10am-7pm shift, while Mr. Perry was forced to remain in the 4am-1pm shift.

71.     Mr. Perry was frustrated that he did not see any change after the EEO decision corroborating his complaints of retaliation and because the retaliation continued through Defendant O'Connor, even after Defendant Lombardo's transfer. Therefore, in August of 2019, Mr. Perry filed another internal complaint. Mr. Perry complained that there had been no changes. He continued to work on the 4am-1pm tour, he had not been paid for hours worked and he continued to have defamatory statements (i.e. AWOL and workplace violence) in his personnel file. To date, he has not received a response regarding his August 2019 complaint.

72.     In or around August of 2019, Mr. Perry applied for two promotions within the Department. However, due to the false and negative markings in his personal record from Defendant Lombardo, Mr. Perry did not receive any acknowledgement of his application for the promotions.

**F. EEOC Complaint**

73.     On March 27, 2019, Plaintiff submitted a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC").

74.     On September 26, 2019, Plaintiff received a Notice of Right to Sue from the EEOC.

75.     This Complaint is filed within 90 days of receipt of the notice.

**COUNT I**
**DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**

76.     Plaintiff hereby repeats and realleges all allegations set forth as if fully set forth herein.

77.     Defendants are "employers" as defined in the ADEA.

78.     Plaintiff is an "employee" as defined in the ADEA.

79. The aforementioned acts of Defendants constitute unlawful discrimination against Plaintiff in violation of 29 U.S.C.A. § 623, which states that:

> It shall be an unlawful for an employer: (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

80. As set forth above, Defendants by their conduct, discriminated against Plaintiff and forced Plaintiff to endure adverse employment actions affecting and altering the terms, conditions and privileges of his employment.

81. As a result of Defendants' violations of the foregoing statutory laws, they are liable to Plaintiff pursuant to 29 U.S.C.A. § 623 for damages and such other remedies as may be deemed just and appropriate.

82. As a direct result of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, significant emotional and financial damages.

## COUNT II
## DISCRIMINATION IN VIOLATION THE OF THE STATE HRL

83. Plaintiff hereby repeats and realleges all allegations set forth as if fully set forth herein.

84. Defendants are "employers" as defined by the State HRL.

85. Plaintiff is an "employee" as defined by the State HRL.

86. The aforementioned acts of Defendants constitute unlawful age discrimination against Plaintiff under the State HRL in violation of Article 15, § 290 *et. seq.* of the New York State Executive Laws and specifically § 296 thereof, which states that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age… of any person to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

87. Upon information and belief, younger employees, were treated more favorably (i.e. not subjected to discriminatory comments) when involved in similar situations. Said adverse treatment of Plaintiff was based upon his age rather than any non-discriminatory reason.

88. As a result of Defendants' violations of the foregoing statutory laws, they are liable to Plaintiff pursuant to State HRL § 297(9).

89. As a direct result of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, from significant losses of income and emotional distress.

## COUNT III
## DISCRIMINATION IN VIOLATION OF THE CITY HRL

90. Plaintiff hereby repeats and realleges all allegations set forth if fully set forth herein.

91. Defendants are "employers" as defined in the City HRL.

92. Plaintiff is an "employee" as defined by the City HRL.

93. The aforementioned acts of Defendants constitute unlawful discrimination against Plaintiff in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, § 8-107 under the City HRL, which states that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age… of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

94. As set forth above, Defendants, by its conduct, discriminated against Plaintiff and forced Plaintiff to endure adverse employment actions affecting and altering the terms, conditions and privileges of his employment.

95.     As a result of Defendants' violations of the foregoing statutory laws, it is liable to Plaintiff pursuant to the City HRL § 8-502 for damages and such other remedies as may be deemed just and appropriate.

96.     As a direct result of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, from significant losses of income and emotional distress.

## COUNT IV
## RETALIATION IN VIOLATION OF ADEA

97.     Plaintiff hereby repeats and realleges all allegations as if fully set forth herein.

98.     29 U.S.C. § 623(d) sets forth that

> It shall be unlawful for an employer to discriminate against any of his employees…because such individual…has opposed, any practice made unlawful by this section.

99.     Defendants, by reason of the foregoing occurrences, and by their behavior, actions and conduct, retaliated against Plaintiff after he engaged in protected activity and made complaints regarding Defendants' discriminatory actions.

100.    Shortly after Plaintiff filed his complaint alleging discrimination and because Plaintiff filed his complaint alleging discrimination, Defendants began their rampant retaliation.

101.    As a direct result of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, from significant losses of income and emotional distress.

## COUNT V
## RETALIATION IN VIOLATION OF
## NEW YORK STATE HUMAN RIGHTS LAWS § 296

102.    Plaintiff hereby repeats and realleges all allegations as if fully set forth herein.

103.    Defendants are "employers" as defined in the State HRL.

104.    Plaintiff is an "employee" as defined in the State HRL.

105. Defendants, by reason of the foregoing occurrences, and by their behavior, actions and conduct, retaliated against Plaintiff after he made complaints regarding Defendants' discriminatory actions.

106. The aforementioned acts of Defendants constitute unlawful retaliation under the State HRL in response to Plaintiff's multiple internal complaints against Defendants concerning its discriminatory treatment and subsequent retaliation in violation of Article 15, § 290, *et. seq.*, of New York State Executive Laws, and specifically § 296 thereof.

107. Despite placing Defendants on notice of the retaliatory conduct Plaintiff suffered and a decision substantiating Plaintiff's allegation from Defendants' internal EEO, Defendants failed to take appropriate remedial action.

108. Defendants, by its conduct, retaliated against Plaintiff and forced Plaintiff to endure adverse employment actions affecting and altering the terms, conditions, and privileges of his employment in violation of Article 15, § 290, *et. seq.*, of New York State Executive Laws, and specifically § 296 thereof.

109. As a result of Defendants' continuous retaliation and the intolerable working conditions, Plaintiff was constructively discharged on September 23, 2019.

110. Defendants' retaliatory acts and conduct were willful, and/or intentional, and/or malicious, and/or reckless, and/or known to Defendants, and were designed and intended to cause and create an oppressive, hostile, and harassing work environment in complete reckless disregard for the rights of Plaintiff.

111. As a direct and proximate result of Defendants' unlawful and persistent pattern of retaliation against Plaintiff, Defendants are liable to Plaintiff pursuant to State HRL Article 15, § 297(9), for the physical, psychological, emotional, and financial harm they caused Plaintiff to

suffer and of which he continues to suffer, in addition to any other such remedies that may be deemed just and appropriate.

## COUNT VI
## RETALIATION IN VIOLATION OF
## NEW YORK CITY HUMAN RIGHTS LAWS § 8-107

112. Plaintiff hereby repeats and realleges all allegations as if fully set forth herein.

113. Defendants are "employers" as defined in the City HRL.

114. Plaintiff is an "employee" as defined in the City HRL.

115. Defendants, by reason of the foregoing occurrences, and by its behavior, actions and conduct, retaliated against Plaintiff after he made complaints regarding Defendants' discriminatory actions.

116. The aforementioned acts of Defendants' constitute unlawful retaliation under the City HRL in response to Plaintiff's repeated complaints concerning Defendants' discriminatory treatment based on Mr. Perry's age and subsequent retaliation after each complaint, in violation of Title § 8, *et. seq.*, of the New York City Administrative Code, and specifically § 8-107 thereof.

117. Despite placing Defendants' on notice of the retaliatory conduct Plaintiff suffered and despite Defendants' internal EEO substantiation of Plaintiff's allegations, Defendants' failed to take appropriate remedial action at all times.

118. As a result of Defendants' continuous retaliation and the intolerable working conditions, Plaintiff was constructively discharged on September 23, 2019.

119. Defendants', by their conduct, retaliated against Plaintiff and forced Plaintiff to endure adverse employment actions affecting and altering the terms, conditions, and privileges of

his employment in violation of Title § 8, *et. seq.*, of the New York City Administrative Code, and specifically § 8-107 thereof.

120. Defendants' retaliatory acts and conduct were willful, and/or intentional, and/or malicious, and/or reckless, and/or known to Defendant, and were designed and intended to cause and create an oppressive, hostile, and harassing work environment in complete reckless disregard for the rights of Plaintiff.

121. As a direct and proximate result of Defendants' unlawful and persistent pattern of retaliation against Plaintiff, Defendants' are liable to Plaintiff pursuant to City HRL Title § 8, § 8-120, for the physical, psychological, emotional, and financial harm Respondents caused Plaintiff to suffer and of which he continues to suffer, in addition to any other such remedies that may be deemed just and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable as of right by jury.

## **REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

a. Compensatory damages in an amount to be determined by a jury sufficient to compensate Plaintiff for all pain and suffering, humiliation, emotional distress, stress and mental anguish;

b. Economic damages in the form of back pay and compensation for lost benefits, plus pre judgment interest;

c. Damages in the form of front pay or reinstatement, plus pre judgment interest;

d. An award of punitive damages sufficient to deter Defendant from engaging in future unlawful conduct;

e. Reasonable costs and attorney's fees; and

f. Any such further relief as this Court deems just and proper.

Dated: New York, New York
December 16, 2019

                                                    Respectfully submitted,

                                                    By: *<u>Brittany Weiner</u>*
                                                    Brittany Weiner, Esq.
                                                    Imbesi Law PC
                                                    1501 Broadway, Suite 1915
                                                    New York, NY 10036
                                                    Tel: (646) 767-2271
                                                    Fax: (212) 658-9177
                                                    Email: brittany@lawicm.com